**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| EMAN MALKIEH, ) | CASE NO. 1:12-CV-1907 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. | |

Plaintiff, Dennis Varner ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner")[1], denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I.   PROCEDURAL HISTORY**

On June 1, 2008, Plaintiff filed her application for SSI, alleging a disability onset date of May 23, 2006.  (Transcript ("Tr.") 13.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  She is automatically substituted as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

judge ("ALJ").  (*Id*.)  On March 18, 2011, an ALJ held Plaintiff's hearing.  (*Id*.)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id*.)  A vocational expert ("VE") also participated and testified.  (*Id*..)  On May 25, 2011, the ALJ found Plaintiff not disabled.  (Tr. 19.)  On June 5, 2012, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On July 24, 2012, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 14, 15.)  Plaintiff argues that: (1) the ALJ failed to properly evaluate her subjective complaints of pain; and (2) substantial evidence does not support the ALJ's determination that Plaintiff is capable of performing light work.  (Plaintiff's Brief ("Pl. Br.") at 9-15.)

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was born on December 1, 1964.  (Tr. 54.)  Plaintiff, who is a naturalized United States citizen, completed ninth grade at a school on the West Bank of the Jordan River.  (Tr. 16, 54.)  Claimant speaks, but cannot read, English.  (Tr. 16.)  She had past relevant work as a cashier.  (Tr. 516.)

### B.  Relevant Medical Evidence

#### 1.  Treatment Notes

On September 10, 2008, orthopedic surgeon James E. Murphy examined Plaintiff, noting her complaint of pain radiating down into her right leg, and shoulder

2

pain.  (Tr. 389.)  His examination revealed a minimally limited range of motion in Plaintiff's left shoulder.  (*Id*.)  He diagnosed her with "likely r[otator] c[uff] pathology in her left shoulder, and instructed her to undergo occupational therapy.  (*Id*.)  A September 11, 2008 MRI of Plaintiff's lumbar spine revealed moderate disc space narrowing at L5-S1.  (Tr. 323.)  An MRI of her shoulder on that same date revealed "a small round amorphouse calcific density adjacent to the greater tuberosity of the humerus."  (Tr. 324.)  On that date, orthopedic surgeon Daniel L. Master, M.D., noted Plaintiff's complaints of lower back pain, radiating into her right thigh and leg, which was exacerbated by sitting.  (Tr. 353.)  Dr. Master recommended that Plaintiff undergo physical therapy.  (Tr. 355.)

On December 30, 2008, pain management physician Kutaiba Tabbaa, M.D., examined Plaintiff upon referral from her primary care physician.  (Tr. 260.)  Dr. Tabbaa noted Plaintiff's complaint of a four-history of lumbar back pain, which Plaintiff described as sharp and burning, radiating into her neck and right leg.  (Tr. 260.)  Plaintiff reported that another physician had prescribed physical therapy, which had not alleviated her pain.  (*Id*.)  Dr. Tabbaa's examination revealed a limited range of motion and mildly painful flexion, extension and rotation.  (Tr. 261.)  He diagnosed Plaintiff with low back pain and lumbar radicular pain.  (*Id*.)  In January and February 2009, Plaintiff underwent lumbar transforaminal epidural steroid injections, performed by Dr. Tabbaa.  (Tr. 250-51, 252-53.)

On July 24, 2009, Alma Garcia, D.O., examined Plaintiff, noting her complaints of a three-year history of low back pain, as well as her refusal to participate in physical therapy or home exercises.  (Tr. 189.)  Plaintiff described sharp pain, radiating to the

right lower leg, increased by standing and bending.  (Tr. 190.)  Dr. Garcia noted that a September 10, 2008 x-ray of Plaintiff's spine revealed moderate disc space narrowing at the L5-S1 level, small osteophytes throughout Plaintiff's lumbar spine, and fragmentation of the spinous process of T12.  (*Id.*)  Dr. Garcia diagnosed Plaintiff with spondylogenic low back pain with radicular symptoms on the right, and recommended that she engage in core strengthening exercises and continue treating with Dr. Tabbaa.  (Tr. 192.)

On July 28, 2009, Noreen C. Griffin, a certified nurse practitioner in Dr. Tabaa's office, noted Plaintiff's complaints of continuing pain in her right lower back and leg.  (Tr. 188.)  She reported that Plaintiff was declining to work on strengthening her core, noting that Plaintiff "was in a mindset that exercise will hurt her," and that Plaintiff had previously "failed a trial of p[hysical] t[herapy]."  (*Id.*)  Nurse Griffin recommended that Plaintiff engage in aquatic therapy.  (*Id.*)

 On October 13, 2009, Plaintiff underwent a lumbar translaminal epidural injection, performed by Dr. Tabbaa.  On October 15, 2009, Nurse Griffin noted Plaintiff's complaint of continuing pain in her lumbar back.  (Tr. 175.)  She noted that Plaintiff had previously declined to pursue physical therapy, and recommended that Plaintiff do so.  (*Id.*)

On November 27, 2009, Melanie L. Leu, M.D., examined Plaintiff, noting her complaints of lower back pain "for many years."  (Tr. 156.)  Dr. Leu's examination revealed pain over Plaintiff's acromioclavicular joints and upper trapezius, and pain with extension of Plaintiff's neck. (Tr. 157.)  She noted that an "old shoulder film showed possible calcific tendinitis."  (*Id.*)  Dr. Leu recommended that Plaintiff continue taking the

4

Neurontin.  (*Id.*)  During a November 2009 physical therapy appointment, Plaintiff reported using a TENS unit a few days per week, but complained that her pain medication was not helping very much.  (Tr. 165.)

A December 4, 2009 scan of Plaintiff's cervical spine revealed degenerative changes of the cervical spine, most pronounced at a narrowing of the disc space and marginal osteophytic changes at C6-C7.  (Tr. 199.)

On February 24, 2010, Dr. Tabaa noted that Plaintiff's leg pain was "a little better," and that Plaintiff "doesn't believe she needs anymore treatments."  (Tr. 229.)  A March 2010 MRI of Plaintiff's spine revealed narrowing of the bilateral neural foramina and spinal canal at C6-C7.  (Tr. 219, 235.)   In April 2010, Plaintiff underwent two cervical epidural steroid injections at the right C6 and C7 levels, performed by Dr. Tabaa.  (Tr. 209, 221.)

On June 4, 2010, Dr. Leu noted Plaintiff's complaint of "feel[ing] tired due to always having pain."  (Tr. 102.)  On June 30, 2010, Dr. Tabaa noted Plaintiff's complaints of "crampy, burning, intermittent" pain radiating into her arms, made worse by rotation.  (Tr. 113.)  He observed that she had "a gradually improving course," and recommended that she continue physical therapy.  (*Id.*)  On July 1, 2010, Plaintiff's physical therapist noted that, after four sessions of physical therapy, Plaintiff was reporting no improvement in her lower back and right shoulder.  (Tr. 119.)  Plaintiff was using a TENS machine when the pain was at its height.  (*Id.*)

On October 20, 2010, Dr. Orra completed a medical source statement regarding Plaintiff's physical capacity.  (Tr. 149-50.)  He assigned the following limitations: occasionally and frequently lifting no more than ten pounds; standing without

5

interruption for no more than 30 minutes, for a total of two hours; sitting for no more than two hours without interruption, for a total of six hours; rarely or never climbing, balancing, stooping, crouching, kneeling, crawling or pushing/pulling; occasionally reaching, handling, feeling and engaging in fine or gross manipulation; avoid heights, moving machinery, temperature extremes and chemicals.  (Tr. 149-50.)  Dr. Orra opined that Plaintiff would require a rest in addition to a morning break, lunch and afternoon break during an eight-hour workday and a sit/stand option.  (Tr. 150.)  He also noted that she experienced mild, moderate and severe pain.  (*Id*.)  Dr. Orra stated that his "physical exam" supported his conclusions.  (*Id*.)

On November 16, 2010, Dr. Tabaa examined Plaintiff, noting that she had "a gradually improving course" since she began receiving steroid injections, and her report that her pain "only gets bad when standing and walking."  (Tr. 93.)  Dr. Tabaa's examination revealed normal range of motion and strength in Plaintiff's back and extremities, and no tenderness.  (*Id*.)

On February 15, 2011, Dr. Leu drafted a letter stating that Plaintiff had been receiving care from her office since early 2007, and that Plaintiff "has numerous long-standing medical problems, including hypertension, hyperlipidemia, elevated blood sugar, lumbar spinal stenosis, and shoulder pain."  (Tr. 87.)  On October 6, 2011, Plaintiff underwent a cervical epidural injection, performed by Dr. Tabbaa.  (Tr. 473-74.)  On November 9, 2011, Plaintiff reported that, although the cervical injection had helped, she still experienced flare ups of sharp, burning pain that was exacerbated by standing and walking.  (Tr. 479.)

**2. Agency Reports**

On August 22, 2008, agency consultant Elizabeth Das, M.D., performed a physical residual functional capacity ("RFC") assessment. (Tr. 393-400.) She opined that Plaintiff could: lift 50 pounds occasionally and 25 pounds frequently; stand, walk and/or sit for about six hours in an eight-hour workday; and could never climb ladders, ropes or scaffolds. (Tr. 395.) She determined that Plaintiff was limited in her ability to reach in all directions, including overhead. (Tr. 396.)

On June 12, 2009, agency consultant Cindi Lynn Hill, M.D., performed a physical RFC assessment. (Tr. 238-45.) Dr. Hill opined that Plaintiff could: lift 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for about six hours in an eight-hour workday; frequently climb ramps and stairs and balance; occasionally stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds. (Tr. 239-40.) Dr. Hill concluded that Plaintiff's allegations regarding the severity of her condition were not credible, noting Plaintiff's report that she lifted her disabled husband from sitting to standing and out of bed. (Tr. 243.)

**C.    Hearing Testimony**

**1.    Plaintiff's Hearing Testimony**

At her March 18, 2011 administrative hearing, Plaintiff testified as follows:

Plaintiff was unable to work due to pain in her back and right shoulder. (Tr. 502-03.) She experienced pain every day. (Tr. 504.) The pain was exacerbated by "anything," including shopping, moving around in her house, standing, washing dishes and cooking on the stove. (Tr. 506-07.) She frequently sat down while cooking. (Tr. 507.) No one assisted Plaintiff in her housework, as her husband was ill and could not

7

walk. (*Id.*)  Plaintiff could sit for about five or ten minutes before experiencing pain.  (Tr. 508.)  She could not wait in long lines at the grocery store because she would have pain.  (*Id.*)  She could not walk for more than 10 minutes without experiencing pain.  (Tr. 508-09.)  On a typical day, Plaintiff watched television, occasionally cooked and cleaned "a little bit."  (Tr. 510.)  She cared for her husband, who used a walker and was on dialysis.  (Tr. 513-14.)

### 2. Vocational Expert's Hearing Testimony

The ALJ described a hypothetical individual of Plaintiff's age, education and work history, with the following limitations:

> Exertionally, this hypothetical worker is limited to a range of light work, [meaning] the hypothetical worker can sit, stand or walk for six hours each during an eight-hour day, lift, carry, push or pull 10 pounds frequently, 20 pounds occasionally.  This hypothetical worker is precluded from using ladders, ropes, and scaffolds, and can only occasionally stoop, kneel, crouch and crawl, [and] is precluded from working above shoulder level bilaterally.

(Tr. 516-17.)  The VE testified that the hypothetical worker described by the ALJ would be capable of performing Plaintiff's past relevant work as a cashier.  (Tr. 517.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

8

months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Plaintiff has not engaged in substantial gainful activity since June 1, 2008, the application date.

9

2. Plaintiff has the following severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease, and a left shoulder rotator cuff injury.

3. Plaintiff does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except Plaintiff can lift, carry, push and pull up to 10 pounds frequently and 20 pounds occasionally. She can sit six hours total in an eight-hour workday with normal breaks, and stand and walk six hours each in an eight-hour workday with normal breaks. Plaintiff can never climb ladders, ropes and scaffolds. She can occasionally stoop, kneel, crouch and crawl. Plaintiff cannot perform work above shoulder level bilaterally. Plaintiff is illiterate in English.

5. Plaintiff is capable of performing past relevant work as a cashier. This work does not require the performance of work-related activities precluded by Plaintiff's RFC.

6. Plaintiff has not been under a disability, as defined in the Act, since June 1, 2008, the date the application was filed.

(Tr. 15-19.)

## V.  LAW & ANALYSIS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the

evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.    Plaintiff's Assignments of Error**

Plaintiff argues that the ALJ failed to properly analyze her subjective complaints of pain in calculating her RFC, and that substantial evidence does not support the ALJ's conclusion that Plaintiff is capable of performing light work. This Court will consider each of these arguments in turn.

**1.    Whether the ALJ Erred in Assessing Plaintiff's Complaints of Pain**

Pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant complains of disabling pain, the Commissioner must apply a two step test to determine the credibility of such complaints. *See Felisky v Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). First,

11

the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain. *Id.* Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severity of pain. *Id.*

Further, in assessing a claimant's complaints of disabling pain, the ALJ must consider all of the relevant evidence, including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's alleged pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) treatments other than medication that the claimant has received to alleviate the pain; and (6) any measures that the claimant takes to relieve his pain. See *Felisky*, 35 F.3d at 1039-40 (citing 20 C.F.R. § 404.1529(c)). Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the requirements by considering most, if not all, of the relevant factors. *Bowman v. Chater*, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam). However, the ALJ must be clear why he finds that a claimant's subjective statements are not credible:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

12

SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

Plaintiff argues that the ALJ erred in assessing her complaints of disabling pain because he failed to: consider evidence regarding activities that exacerbated Plaintiff's pain, indicate how her treatment affected his decision, and discuss the weight he assigned to each of the relevant factors. Plaintiff's arguments lack merit.

Here, a review of the ALJ's decision reveals that, in addition to acknowledging the requirements of the relevant regulations and SSR 96-7p (Tr. 16), the ALJ discussed most, if not all, of the relevant factors in his assessment of Plaintiff's complaints of pain. The ALJ found that Plaintiff suffered medically determinable impairments that could cause Plaintiff's alleged pain – namely, lumbar degenerative disc disease, cervical degenerative disc disease, and a left shoulder rotator cuff injury. (Tr. 15.) He noted that Plaintiff experienced pain in performing some of her activities of daily living – such as shopping, cooking, vacuuming and carrying heavy objects – but also observed that she cared for her disabled husband. (Tr. 16, 17.) The ALJ recognized Plaintiff's complaints "of pain in her back that radiates down her left leg, pain in her right side and right shoulder. She has difficulty standing up and has pain when walking or exerting herself." (Tr. 16.) He outlined her treatment history – noting that it was conservative – and the factors that she described as aggravating her pain. (Tr. 16-17.)

Further, the ALJ cited to evidence supporting the conclusion that Plaintiff's subjective complaints were not fully credible. For example, the ALJ noted that Plaintiff received conservative treatment, that her treating physicians had not assigned her functional limitations, and that several of her physicians noted that she had normal

coordination, gait and range of motion despite her complaints of pain. (Tr. 17.) He also noted that she declined to perform the exercises that her physicians had recommended to strengthen her core. (*Id*.) *See* SSR 96-7p, 1996 WL 374186, *7 ("On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatments as prescribed and there are no good reasons for the failure."). Because the ALJ properly assessed Plaintiff's claim of disabling pain, this assignment of error is not well taken.

    **2.    Whether Substantial Evidence Supports the RFC**

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that she was capable of performing light work. Plaintiff points to the October 2010 medical source statement from Dr. Orra, who assigned Plaintiff limitations consistent with sedentary work. Plaintiff contends that, because substantial evidence supports Dr. Orra's opinion that she is limited to sedentary work, she is entitled to a finding of disability. Plaintiff's argument lacks merit.

As a preliminary matter, to the extent that Plaintiff argues that the ALJ erred in failing to adopt Dr. Orra's limitations, that argument fails. The ALJ rejected Dr. Orra's opinion as "wholly inconsistent with the medical evidence of record," and "a reflection of [Plaintiff's] own statements regarding limitation of function, rather than an opinion based on signs and objective testing." (Tr. 18.) Substantial evidence supports the ALJ's decision to reject Dr. Orra's opinion. No other treating or reviewing physician observed that Plaintiff was as limited as Dr. Orra opined. Dr. Orra supported his conclusions only by referencing his "physical exam" of Plaintiff, rather than objective tests and scans.

(Tr. 149-50.)

Further, even if substantial evidence supported Dr. Orra's conclusions, Plaintiff is not entitled to remand because substantial evidence also supports the ALJ's conclusion regarding her limitations. See *Ealy*, 594 F.3d at 512. As noted by the ALJ, Plaintiff received conservative treatment for her back and shoulder pain, and no physician recommended surgery. Further, no other treating physician opined that she had any functional limitations. Rather, Plaintiff's treating physicians consistently recommended that she undergo physical therapy and exercise to improve her condition. (Tr. 16-18.) Further, the ALJ's determination of Plaintiff's RFC is consistent with the agency consultant's opinions regarding her limitations. (Tr. 17, 238-45.) Other than the opinion of Dr. Orra – which the ALJ properly rejected – Plaintiff points to no other objective evidence supporting her contention that she is not capable of light work. Because substantial evidence in the record supports the ALJ's determination of Plaintiff's RFC, this argument lacks merit.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

                                                 s/ *Nancy A. Vecchiarelli*
                                                 U.S. Magistrate Judge

Date: March 26, 2013